UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| **WCI COMMUNITIES, INC.** *et. al* : | |
| : | Case No. 08-11643 (KJC) |
| Debtors : | (Jointly Administered) |

## MEMORANDUM[1]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

The Fremont Building Company ("Fremont") is a commercial lessor that leased certain real property to the debtor, WCI Communities, Inc. ("WCI"). Before the Court is Fremont's application for an allowed administrative expense claim pursuant to Sections 365(d)(3) and/or 503(b) of the Bankruptcy Code (D.I. 1396)(the "Administrative Expense Application"), in which Fremont seeks administrative expense priority for its claim against WCI for certain *ad valorem* taxes owing under the lease.[2] For the reasons set forth herein, Fremont's Administrative Expense Application will be denied.

### Undisputed Facts

On August 4, 2008 (the "Petition Date"), WCI and related entities (the "Debtors") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their respective businesses and manage their properties as debtors-in-possession. On

---

[1] This Memorandum constitutes the findings of fact and conclusions of law required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the motion before it pursuant to 28 U.S.C. § 1334 and §157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(A), (B) and (O).

[2] In the Administrative Expense Application, Fremont also sought administrative expense priority for claims based on post-petition rent and the cost to remove model homes from the leased premises. However, at the hearing, Fremont withdrew its request with respect to those claims, without prejudice. (Tr. 6/18/09 at 24). This Memorandum addresses only the request for payment of the *ad valorem* taxes.

August 26, 2009, this Court entered an order (the "Confirmation Order")(D.I. 2363) confirming the Second Amended Joint Chapter 11 Plan of Reorganization for WCI Communities, Inc. and Its Affiliated Debtors (the "Plan")(docket no. 2088).

As of the Petition Date, WCI was the lessee under two leases with Kiva, Inc. (the predecessor to Fremont) as lessor: (i) a Ground Lease dated September 29, 2000 for real property located in Hillsborough County, Florida, on which WCI was to construct and operate individual residential model homes (the "Ground Lease"), and (ii) a Lease Agreement dated September 29, 2000 for real property and improvements located in Hillsborough County, Florida (the "Welcome Center Lease").[3] Both Leases were "net leases" that required WCI to pay all taxes and other charges owing with respect to the leased premises as "additional rent." (*See* the Ground Lease at ¶5 and ¶13, and the Welcome Center Lease at ¶2(b) and ¶21).[4] The leased premises of the Ground Lease and the Welcome Center Lease overlap, and Fremont is seeking payment of one outstanding *ad valorem* tax obligation in the amount if $131,774.95, alleged to be due under the terms of both Leases.

As part of the Debtors' restructuring efforts, the Debtors filed an omnibus motion to reject certain leases, including the Ground Lease and the Welcome Center Lease (D.I. 1152). By Order dated February 20, 2009, the Debtor was authorized to reject certain leases, including the Ground Lease and the Welcome Center Lease, effective February 27, 2009. (D.I. 1213).

---

[3]The Ground Lease and the Welcome Center Lease may be referred to jointly herein as the "Leases."

[4]Copies of the Ground Lease and the Welcome Center Lease were attached to the Administrative Expense Application.

Discussion

The issue before the Court is whether Fremont's claim for payment of the *ad valorem* taxes is entitled to payment under §365(d)(3) or administrative expense priority under §503(b).

1. Section 365(d)(3)

Bankruptcy Code §365 requires a bankruptcy trustee (or a debtor in possession, pursuant to Bankruptcy Code §1107) to fulfill all the obligations that arise under a non-residential lease subsequent to the entry of the order for relief and prior to the time that the lease is rejected. *In re Montgomery Ward Holding Corp.*, 268 F.3d 205, 206 (3d Cir. 2001).[5]

In *Montgomery Ward*, the Third Circuit Court of Appeals considered whether §365(d)(3) required the debtor to reimburse the landlord for certain real estate tax obligations. Shortly after the debtor's bankruptcy filing on July 7, 1997, the landlord in *Montgomery Ward* sent three invoices to the debtor for payment of 1996 and 1997 real estate taxes. *Id* at 207. The *Montgomery Ward* debtor sought to pay only the prorated potion of taxes attributable to the postpetition period. The lease in *Montgomery Ward* required the debtor to pay all taxes as additional rent upon receipt of an invoice from the landlord. *Id.*

The *Montgomery Ward* Court determined that "[t]he clear and express intent of §365(d)(3) is to require the trustee to perform the lease in accordance with its terms." *Id.* at 209. In other words, the terms of the lease will determine the nature of the "obligation" and when it "arises." *Id.* The *Montgomery Ward* Court held that "an obligation arises under a lease for

---

[5]Specifically, Section 365(d)(3) provides, in pertinent part, that "[t]he trustee shall timely perform all the obligations of the debtor . . . arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. §365(d)(3).

3

purposes of §365(d)(3) when the legally enforceable duty to perform arises under that lease." *Id.* at 211. The Court decided that, pursuant to the terms of the lease in issue in *Montgomery Ward*, the debtor's obligation to reimburse the landlord for tax payments arose after the order for relief, but before rejection. Therefore, the debtor was obligated to reimburse the landlord for the full (not prorated) amount of the real estate taxes. *Montgomery Ward*, 268 F.3d at 212.

Similarly, here, the issue is whether WCI's obligation to pay the *ad valorem* taxes arose after the order for relief, but before rejection; that is, between August 4, 2008 and February 27, 2009. Pursuant to *Montgomery Ward*, the terms of the two Leases will determine when WCI's obligation to pay the taxes arose. The Ground Lease provides:

> As additional rental hereunder ("Additional Rent"), Lessee shall pay and discharge as they become due, promptly and before delinquency, all ad valorem taxes, . . . . The real estate taxes shall be paid by March 1 of each year of the Lease term (for the preceding calendar year) or extension thereof and Lessee shall provide to Lessor a copy of the paid tax receipt by March 1 of each year.

Ground Lease, ¶13(a). Fremont did not offer into evidence a copy of the tax bill or assessment in the claim amount of $131,774.95. Attached as Exhibit B to the Debtors' objection to the Administrative Expense Application is a copy of the "2008 Notice of Ad Valorem Taxes and non-Ad Valorem Assessments Real Property Taxes" for Hillsborough County, Florida, which reflects that the tax amount in dispute is a real estate tax. Under the terms of the Ground Lease, WCI is not obligated to pay real estate taxes until March 1 of each year, which date falls after the rejection date. Fremont's claim under the Ground Lease is not payable under §365(d)(3).

However, Fremont also claims that the taxes should be paid under the terms of the Welcome Center Lease, which provide:

> Tenant shall also pay all . . . real property taxes for the Premises which fall due during the Initial Term and any Renewal Term as additional rent at the time such items fall due, or are incurred, as the case may be, and in any event shall reimburse Landlord for any such item paid by Landlord upon demand therefor. . . .

Welcome Center Lease, ¶2(b). Fremont argues that because this provision requires the Tenant to pay the taxes when they "fall due," WCI is obligated to pay the taxes on November 1 of each year pursuant to the applicable Florida statute, which provides:

> All taxes shall be due and payable on November 1 of each year or as soon thereafter as the certified tax roll is received by the tax collector. Taxes shall become delinquent on April 1 of the following year in which they are assessed or immediately after 60 days have expired from the mailing of the original tax notice, whichever is later. If the delinquency date for ad valorem taxes is later than April 1 of the year following the year in which taxes are assessed, all dates or time period specified in this chapter relative to the collection of, or administrative procedures regarding, delinquent taxes shall be extended a like number of days.

Fla.Stat. §197.333.

The plain language of the Florida statute provides that the taxes are due some time between November 1 and April 1, or 60 days after the mailing of the original tax notice. Thus, for the purpose of interpreting the lease provision before me, the statute itself provides no fixed due date. On the other hand, WCI argues that the taxes are not "due" until the date when they may be paid without penalty. In *In re Garden Ridge Corp.*, 323 B.R. 136, 143 (Bankr.D.Del. 2005), the Court decided that the tax obligations were due on the last day the taxes could be paid without penalty, but the Court's determination of the "due date" was based on the language in the lease, which provided that "Tenant shall pay before any fine, penalty, interest, or cost may be added thereto for nonpayment thereof, all real estate taxes . . . ." *Id.* *See also In re Sportman's Warehouse, Inc.*, 2009 WL 2382625, *6-*7 (Bankr.D.Del. Aug. 3, 2009)(same). The Welcome Center Lease is much less specific than the lease at issue in *Garden Ridge* and provides only that

5

the taxes are to be paid "when due."

Therefore, I cannot conclude, based on the record before me, that WCI's legally enforceable duty to pay the taxes arose between August 4, 2008 and February 27, 2009. Fremont's request for administrative expense status under Bankruptcy Code §365(d)(3) will be denied.

2.   <u>Section 503(b)</u>

Fremont also asserts that the obligation to pay the *ad valorem* taxes under the Leases should be treated as an allowed administrative expense claim pursuant to §503(b). In *In re Goody's Family Clothing, Inc.*, 610 F.3d 812 (3d Cir. 2010), the Third Circuit of Appeals held that §365(d)(3) does not preempt the landlord's ability to seek recovery under §503(b) for unpaid rent.[6] "Put simply, §365(d)(3) does not supplant or preempt §503(b)(1)." *Goody's*, 610 F.3d at 817.

The debtor in *Goody's* failed to pay rent that was due on June 1, then filed a bankruptcy petition on June 9. The Court determined that its holding in *Montgomery Ward* did not bar the landlord from seeking recovery of the postpetition "stub rent" due for the period June 9 to June 30 as an administrative claim under §503(b)(1). *Id.* The Court looked to the *Mammoth Mart* test and noted that the interests to be protected are those of third parties who "are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected . . ." *Id.* citing *Crater v. Mammoth Mart, Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d

---

[6] Although the Third Circuit Court's decision in *Goody's* was issued after the hearing, the Court's decision is consistent with prior decisions by the Delaware bankruptcy courts, holding that §365(d)(3) is an additional avenue for enforcing performance of postpetition lease obligations, and supplements recovery under §503(b). *See In re Goody's Family Clothing, Inc.*, 392 B.R. 604, 612-13 (Bankr.D.Del. 2008), *In re Valley Media, Inc.*, 290 B.R. 73, 76-77 (Bankr.D.Del. 2003).

950, 954 (1st Cir. 1976). The Court held:

> For a commercial lessor's claim to get administrative expense treatment under §503(b)(1), the debtor's occupancy of the leased premises must confer an actual and necessary benefit to the debtor in the operation of the business. . . . Proving this is the lessor's burden.

*Goody's*, 610 F.3d 817 (citations omitted).

From the pleadings, it appears undisputed that the Debtors here continued to occupy the leased premises until the Leases were rejected. At the hearing on the Administrative Expense Application, Fremont offered neither argument nor evidence in support of its claim for an administrative expense under Bankruptcy Code §503(b). Fremont has not demonstrated that the Debtors' occupancy of the leased premises - - without more - - warrants treating the *ad valorem* taxes as an actual and necessary cost of preserving the estate:

> For a claim in its entirety to be entitled to first priority under [§503(b)(1)(A)], the debt must arise from a transaction with the debtor-in-possession . . .[and] the consideration supporting the claimant's right to payment [must be] beneficial to the debtor-in-possession in the operation of the business.

*O'Brien Envtl. Energy, Inc. v. Calpine Corp.*, 181 F.3d 527, 532-33 (3d Cir. 1999) citing *Mammoth*, 536 F.2d at 954. I also note that the real estate taxes are an obligation of the property owner, and, while the Debtors agreed in the Leases to pay the real estate taxes, there is no evidence here that payment of those taxes would provide the debtors-in-possession with any value in return.

On the record before me, I cannot conclude that the *ad valorem* taxes are an actual and necessary cost of preserving the Debtors' estate.[7]

---

[7] Therefore, I need not - - and do not - - decide here whether, as a matter of law, unpaid *ad valorem* taxes, like unpaid stub rent, fall within the ambit of the Third Circuit's decision in *Goody's* and should be afforded §503(b)(1) treatment.

## Conclusion

For the reasons stated herein, the Administrative Expense Application will be denied. An appropriate order follows.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: September 2, 2010